McCLELLAN et al. v. PYEATT et al.

(Circuit Court of Appeals, Eighth Circuit. March 4, 1895.)

No. 513.

1. STATUTE OF FRAUDS—WHEN IN FORCE IN INDIAN TERRITORY.
    Act Cong. May 2, 1890, which put in force in the Indian Territory, among other laws, the statute of frauds, making void conveyances to defraud creditors, has no retrospective effect, and, before the passage of said act, it was competent for an insolvent debtor to give away his property, and deprive his creditors, who had not obtained liens, of the opportunity to collect their claims from such property.

2. TRUSTS—FOLLOWING TRUST PROPERTY—INDIAN TERRITORY.
    One M., a citizen of the Cherokee Nation, mortgaged certain cattle to the plaintiffs. Subsequently he used a part of the cattle so mortgaged to purchase the improvements on certain land, which he then conveyed to his wife. Held, that M. was a trustee of the cattle for plaintiffs, and they had the right to follow the proceeds of the trust property in the hands of M.'s wife; and that, under the act of March 1, 1889, creating the United States court in the Indian Territory, that court had power to enforce such right.

Appeal from the United States Court in the Indian Territory.

This was a suit by Henry C. Pyeatt and James C. Kirby against William P. McClellan and Rachel McClellan to subject certain property to the payment of a judgment against the defendants. The circuit court made a decree in favor of the complainants. Defendants appeal.

In this case Rachel McClellan and William P. McClellan, her husband, appeal from a decree rendered by the United States court in the Indian Territory that subjected the improvements which the appellant Rachel claimed to own, and which were situated upon two farms upon lands of the Cherokee Nation, to the payment of a judgment against her husband in favor of Henry C. Pyeatt and James C. Kirby, the appellees. The facts upon which this decree rests are as follows: Rachel McClellan is a Cherokee Indian, and a citizen of the Cherokee Nation by blood. William P. McClellan intermarried with her in 1879, and thereby became an adopted citizen of the Cherokee Nation. From 1879 until after the rendition of the judgment in favor of the appellees, William P. McClellan and his wife occupied a farm of about 600 acres upon the lands of the Cherokee Nation. During this time he made large and valuable improvements upon this tract of land. For convenience this farm will be called the "McClellan Place." In 1884, William P. McClellan purchased a large number of cattle of Henry C. Pyeatt and James C. Kirby, the appellees. On December 16, 1884, he gave to the appellees a mortgage upon about 1,200 cattle, a part of which had been purchased of the mortgagees, to secure the payment of certain promissory notes given by him for the purchase price of these cattle. In 1885 he purchased of one Dick Prather the improvements upon a tract of about 800 acres of the lands of the Cherokee Nation, and paid him for these improvements with 100 of the mortgaged cattle. For convenience this farm will be called the "Prather Place." On October 3, 1889, the appellees recovered a judgment against William P. McClellan upon the debt secured by the mortgage upon the cattle for the sum of $7,598.07. On November 18, 1889, McClellan conveyed the McClellan place and the Prather place to his wife, Rachel McClellan, in consideration that she would pay out of the proceeds of the places $1,850, which he owed to two of his creditors. The appellees obtained a return of nulla bona upon an execution issued upon their judgment against McClellan, and then brought the bill in this case to subject these improvements to the payment of their judgment. The court below decreed that the conveyance to Rachel McClellan was fraudulent and utterly void, and subjected both of the farms and the improvements thereon, with the exception of 160 acres of the McClellan place, which was occupied as a homestead, to the payment of the judgment in favor of the appellees.

George E. Nelson (W. M. Cravens, on the brief), for appellants.

John H. Rogers, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

Has the act of congress of May 2, 1890, which put in force in the Indian Territory the statute of frauds, a retrospective effect? This is the crucial question in this case. On November 18, 1889, when the conveyance in question from McClellan to his wife was made, there was no statute relative to fraudulent conveyances corresponding to 13 Eliz. c. 5, in force in the Indian Territory. By the act of May 2, 1890 (26 Stat. 94, c. 182, § 31, 1 Supp. Rev. St. 733), congress provided "that certain general laws of the state of Arkansas * * * are hereby extended over and put in force in the Indian Territory." One of these general laws was the provision of section 3374, c. 68, Mansf. Dig., that "every conveyance or assignment, in writing or otherwise, of any estate or interest in lands, or in goods and chattels, or things in action * * * made or contrived with the intent to hinder, delay or defraud creditors or other persons of their lawful actions, damages, forfeitures,

debts or demands, as against creditors and purchasers prior and subsequent shall be void." The same section of the act of May 2, 1890, which puts this statute in force in the Indian Territory, provides that "upon a return of nulla bona, upon an execution upon any judgment against an adopted citizen of any Indian tribe, or against any person residing in the Indian country and not a citizen thereof, if the judgment debtor shall be the owner of any improvements upon real estate within the Indian Territory, in excess of one hundred and sixty acres occupied as a homestead, such improvements may be subjected to the payment of such judgment by a decree of the court in which such judgment was rendered."

It is under these provisions of this act of congress that the bill in this case was filed and the decree was rendered. On May 2, 1890, then, for the first time in the Indian Territory, the law declares that a voluntary conveyance by a debtor to delay or defraud his creditors "shall be void." In the absence of such a statute, it was perfectly competent for an insolvent debtor to give his property to his wife or to his friend, and thus to deprive his creditors of an opportunity to enforce the collection of their claims from any of his property upon which they had fastened no liens. The debtor's right of disposition was unrestricted in this respect, and it was undoubtedly the frauds that this condition of the law permitted that originally induced the enactment of the statute of 13 Eliz. in England, and the adoption of the provisions of that statute in the various states of this nation. The conveyance of these improvements by McClellan to his wife, then, five months before this statute was put in force in the Indian Territory, was valid when it was made, and it conveyed to his wife all the title to them that McClellan had. Did the subsequent enactment of this statute retroact upon this prior conveyance, divest the title Rachel McClellan had lawfully acquired, and subject these improvements to the same liability, to be applied to the payment of the judgment against her husband to which they would have been subject if the deed to her had never been made? The maintenance of the decree in this case requires an affirmative answer to this question, for that decree rests upon this statute of Arkansas, put in force in the Indian Territory by this act of congress. To sustain it we must hold that the passage and approval of the act of congress made a valid title to improvements worth thousands of dollars voidable without notice to, or hearing from, their owner, and in effect transferred the right to them in an instant of time from one individual to others by the mere fiat of the legislative department of the government. The unconstitutionality of a law that would have such an effect and the manifest injustice of such a result forbid any such interpretation of this act of congress. The language of the act itself likewise forbids it. The act provides that the laws of Arkansas there specified "are hereby extended over and put in force in the Indian Territory," and the language of the Arkansas statute is that every fraudulent conveyance "shall be void." The words of the act of congress and of the statute relate to the present and the future, not to the past, and there

are no words in the act or the statute that indicate any intention to give either of them a retrospective effect. "Courts uniformly refuse to give to statutes a retrospective operation whereby rights previously vested are injuriously affected, unless compelled to do so by language so clear and positive as to leave no room to doubt that such was the intention of the legislature." Chew Heong v. U. S., 112 U. S. 536, 559, 5 Sup. Ct. 255; U. S. v. Heth, 3 Cranch, 398, 413; Murray v. Gibson, 15 How. 421, 423; McEwen v. Den, 24 How. 242, 244; Harvey v. Tyler, 2 Wall. 328, 347; Sohn v. Waterson, 17 Wall. 596, 599; Twenty Per Cent. Cases, 20 Wall. 179, 187.

The result is that section 31 of the act of congress of May 2, 1890, which puts the statute of frauds of the state of Arkansas in force in the Indian Territory, had no retrospective effect, and did not avoid or affect the conveyances made before its enactment. This conclusion necessitates a reversal of the decree, a dismissal of the bill, so far as it relates to the McClellan place, and a decree that the possession of that place, and of all the rents, issues, and profits of it, that have been obtained by the receiver in this suit, with lawful interest thereon, be returned to the appellant Rachel McClellan, because the deed to her was not affected by the subsequent act of May 2, 1890, and the decree, so far as it subjects the McClellan place to the payment of the judgment of the appellees, rests entirely upon the erroneous assumption that that act avoided the conveyance in question.

The claim of the appellees to subject the improvements upon the Prather place to the payment of their judgment, however, rests upon two grounds: First, that the conveyance to Mrs. McClellan became voidable by virtue of the act of May 2, 1890; and, second, that McClellan purchased these improvements with cattle which he held as their trustee, and that Mrs. McClellan took these improvements charged with that trust. We have already held that their claim to this property cannot be maintained upon the first ground. Can it be sustained upon the second? The 100 cattle with which McClellan bought the improvements upon the Prather place were mortgaged to the appellees to secure the very debt now evidenced by their judgment. McClellan held those cattle under that mortgage, as their trustee, to secure their debt, and to apply the proceeds of the cattle, when sold, to its payment. He bought the improvements on the Prather place with these cattle without the consent of his cestuis que trustent. These improvements were the proceeds of the sale of the cattle, and, at the option of the mortgagees, they stood charged with the same trust as did the cattle themselves. The transfer to Mrs. McClellan was a conveyance of trust property by a trustee, without consideration, and this conveyance left the improvements charged, in her hands, with the same trust to which they were subject in the possession of her husband.

Where a trustee violates or abuses his trust, the cestui que trust has the option to follow the trust property, or that which is substituted for it, and he may subject the latter, in the hands of a

voluntary grantee or purchaser with notice, to the discharge of the trust originally imposed upon the trust property. May v. Le Claire, 11 Wall. 217, 236; Perry, Trusts, § 217. Under this principle of the law the improvements upon the Prather place, in the hands of Mrs. McClellan, stood charged with the original trust, which the appellees had a right to enforce against them. Under the act of March 1, 1889, which created the United States court in the Indian Territory (25 Stat. c. 333, § 6), that court was empowered to grant such relief in equity, in cases within its jurisdiction, as was consonant with the established rules and practice of courts of chancery, and this authority was confirmed to it by the subsequent act of May 2, 1890. That court, therefore, had jurisdiction to enforce express or implied trusts in the absence of the statute of fraudulent conveyances. Thompson v. Rainwater, 49 Fed. 406, 1 C. C. A. 304. A decree may accordingly be rendered in this case by the court below, directing the sale of the improvements upon the Prather place to pay the debt to secure which the cattle that purchased these improvements were mortgaged. The decree below is accordingly reversed, with costs, and the case remanded, with directions to the court below to enter a decree not inconsistent with the views expressed in this opinion.