### SMITH et al. v. SHELLABARGER et al.

(District Court, D. Colorado. July 14, 1923.)

No. 7133.

Chattel mortgages ⬤➝227—Mortgagee may recover proceeds of property sold without authority from one who with notice induced its misapplication.

Mortgagors of a band of sheep and their increase sold the increase without authority, and on representations by the agent of defendants that he had examined the mortgage and that it did not cover increase paid him the proceeds on another debt. *Held*, that the mortgagee might at

⬤➝For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

his election ratify the sale and in equity recover the proceeds from defendant as a fund which the mortgagors held in trust.

In Equity. Suit by G. M. Smith and George R. Ricker, copartners as Smith & Ricker, against Ralph W. Shellabarger, the Means-Ashley Mercantile Company, and others. Decree for complainants.

Corlett & Corlett, of Monte Vista, Colo., for plaintiffs.
Pershing, Nye, Fry & Tallmadge, of Denver, Colo., for defendants.

SYMES, District Judge. From all the evidence I find the following material facts to be established:

That the complainants, Smith & Ricker, of Kansas City, Mo., held the note of the defendants A. B. and M. K. Slane for $9,536.56, dated March 27, 1920, and secured by a chattel mortgage of the same date on 1,244 head of sheep. This mortgage was duly recorded, and also covered the "increase" of the sheep, and provided that the same should not be sold or disposed of without the written consent of the plaintiffs, the mortgagees; further, that the Slanes owed the defendant the Means-Ashley Mercantile Company $6,000, for which they gave the Mercantile Company their note in said amount, dated August 30, 1920, due November 1, 1920, secured by a chattel mortgage on some raw wool in storage and the lamb crop, or increase for 1920, from a second band of sheep owned by A. B. and M. K. Slane; said lamb crop numbering about 500 head. These two bands of sheep, separately branded, were run together as two bands by the Slanes as mortgagors.

That on about the 14th of October following the Slanes sold to the firm of Macy & Sons 1,202 head of young lambs, being the increase of the two bands of sheep, 648 head of which were covered by the mortgage of these plaintiffs. This sale was unauthorized by the plaintiffs, and in direct violation of the terms of their mortgage. Plaintiffs promptly demanded of the purchaser the return of the lambs that were covered by their mortgage. The purchaser refused to deliver. The mortgagors received a uniform price of $6.84 a head, and the proceeds from the 648 lambs covered by plaintiffs' mortgage, $4,432.32, deposited by Slanes, mortgagors, in a bank at Saguache, together with the proceeds for the balance of the lambs sold.

Upon learning of the sale of these lambs, defendant Shellabarger, representing the Means-Ashley Mercantile Company, sought out the Slanes and demanded payment of their note. The Slanes protested that the note was not due, and stated that part of the money, at least, really belonged to the plaintiffs, as it was the proceeds of lambs covered by their mortgage. Shellabarger was persistent, and at various interviews from then up to November 4th stated that he had carefully examined the records, read the plaintiffs' mortgage, and assured the Slanes that it did not cover the increase. Further, at an interview that took place in the bank at Saguache in the early part of November, the Slanes stated to Shellabarger that the plaintiffs' representative had come to town, and was demanding that part of this fund that had been derived from the sale of their lambs. Shellabarger again reiterated that the lambs from which the money was derived were not

covered by the mortgage, as it said nothing about the increase. Finally the Slanes gave Shellabarger a check for a little over $6,000 out of said moneys. Immediately thereafter, at a conference called by the representative of the plaintiffs, after hearing of the sale and payment, at which the Slanes and Shellabarger were present, Shellabarger admitted that he had examined the mortgage as recorded, and had been under the impression that the "increase" was not mentioned in it; that he had so advised the plaintiffs, and stated that he later found·out he was mistaken. Upon demand being made for the return of so much of the money paid him as represented the proceeds of the lambs covered by the plaintiffs' mortgage, he asked for time to consider, but later decided not to pay. Thereupon plaintiffs bring this action.

The court has not been cited to, and has been unable to find, any case that is authority upon this exact state of facts. There are, however, well-known principles of equity that are applicable and decisive. It is clear that the plaintiffs have been deprived of the security of their mortgage through no fault or laches upon their part. They did not consent to the sale of their lambs, and knew nothing about it until it was an accomplished fact, whereupon they were diligent both in demanding the return of the sheep and tracing and demanding the payment of their share of the proceeds. It is not seriously denied that the proceeds of the sale of the lambs covered by their mortgage went to the defendants, either with direct knowledge of all the facts, or with sufficient knowledge to put them upon notice of all the facts. This unauthorized sale worked a conversion and immediate default in the mortgage. Ilfeld v. Ziegler, 40 Colo. 401, 91 Pac. 825. So the plaintiffs had the right in law, and it was their duty in equity, to at once proceed for their own protection.

It is ably urged that the only remedy they had was to replevin the sheep from the purchasers, Macy & Co., who, of course, obtained title thereto subject to the mortgage, and that for that reason they had no right to follow the proceeds, which had been paid to the defendant the Means-Ashley Mercantile Company, in satisfaction of a debt admittedly due and owing, and that the latter did not take this money at their peril, and were under no duty to inquire concerning its source. Without deciding, it may be admitted that in a proper case the plaintiffs should have pursued their remedy against Macy & Co., and had no right to elect between that remedy and following the proceeds, as they are attempting to do here. The facts here, however, are such that the above rule, if it is the law, is not applicable.

The facts show, as I have found them, that the defendant Shellabarger, acting for himself and the Means-Ashley Mercantile Company, upon learning of the unauthorized sale, took a very active part, and aided and abetted the Slanes in all acts done in violation of the rights of the plaintiffs. Knowing that the Slanes had deposited the proceeds in the bank, and with knowledge that it was derived from one of the two of the bands of sheep covered by the mortgages, and with knowledge of the plaintiffs' mortgage, he not only demanded payment out of their fund, but persisted therein even after being informed by the

Slanes that they were holding it in effect as trustee for the plaintiffs. Shellabarger stated to the Slanes as a fact that he had read the plaintiffs' mortgage, that it did not cover the increase, and that therefore the Slanes had a right to sell the lambs and dispose of the proceeds as they might wish, without violating any rights of the plaintiffs. This statement of fact was false, as Shellabarger afterwards found out and admitted. He also knew, before he received the payment, that the plaintiffs had learned of the unauthorized sale and were demanding payment. I think it is clearly established, therefore, that except for the activity and persistence of Shellabarger, and his erroneous representations respecting the terms of the mortgage, the Slanes would never have made the payment to him of money which in equity and good conscience belonged to the plaintiffs.

The defendants Shellabarger and the Means-Ashley Mercantile Company are in effect attempting to keep money that belongs to plaintiffs, and which would have been paid them, had it not been for defendants' own admitted misrepresentations, made with full knowledge of the plaintiffs' rights, or upon such notice as would put them upon full notice thereof. Having examined the record for the purpose of finding out exactly what the terms of the mortgage were, they were bound by the constructive notice of all the mortgage contained, and cannot profit by their mistake. If it was necessary to the decision of the case, it could be said that Shellabarger and the Means-Ashley Mercantile Company would never have thought of demanding all of their money, had they known, as they should have known, that the plaintiffs' mortgage covered the increase. I prefer, however, to put my decision upon the ground that the plaintiffs were deprived of their rights and suffered a loss by reason of the overt acts of the defendants; for otherwise the Slanes would never have thought of paying the money to any one else but its equitable owners.

It is stated in 5 R. C. L., § 81, that, if a mortgagor sells property without authority, the mortgagee may disavow the sale and retake the property, or may ratify the sale and sue the mortgagor for the proceeds. I think it follows that in equity he may sue the party to whom the mortgagor has paid the proceeds, where, as in the instant case, the latter not only knew where the money he received came from, but was the active and inducing cause that resulted in a misapplication of the proceeds. There is also the general principle that the mortgagee has a right of action against any one who interferes with his rights, or who damages or destroys the mortgaged property with knowledge of the existence of the mortgage. Union Stockyards Bank v. Gillespie, 137 U. S. 411, 11 Sup. Ct. 118, 34 L. Ed. 724; In re Ballard (D. C.) 279 Fed. 574, at page 589; 11 Corpus Juris, 602.

Further, in Colorado, when a chattel mortgage is given, the mortgagee takes a conditional title to the mortgaged property, subject to the right of the mortgagor to divest the mortgagee's title by payment of the amount due. Sorrells v. Sigel-Campion Live Stock Commission Co., 27 Colo. App. 154, 148 Pac. 279. Upon breach of the mortgage by the mortgagor, the sale becomes absolute. Sorrells v. Sigel-Campion Live Stock Commission Co., 27 Colo. App. 154, 168, 148 Pac. 279.

When, therefore, the Slanes sold the sheep to Macy & Sons, a breach occurred in the mortgage, and the absolute title to the sheep and the increase vested in the mortgagees. The latter could then either sue and recover their sheep from Macy & Sons, or ratify the sale, and thereby cause the funds received by the mortgagor for the sheep to become a constructive trust fund in Slanes' hands, because derived from the sale of their sheep.

Shellabarger and the Means-Ashley Mercantile Company, having knowledge of all the facts, were bound to know the proceeds were impressed with a trust, and that the plaintiffs can follow them wherever they can be identified. McClellan et al. v. Pyeatt et al., 66 Fed. 843, 14 C. C. A. 140.

Judgment will be for the plaintiffs as prayed for.