Sewall, C. J.
There has been, heretofore, a decision in a case reported between these same parties, and in this action. We have reviewed that decision, and adhere to the opinions then expressed. The sheriff’s return is conclusive, as to the formal proceedings by the appraisers and himself, and is not to be controlled by other evidence. The effect of those proceedings, between the creditor and debtor in the execution, is to be determined by the sheriff’s return, which is not to be supplied or contradicted, (a) The creditor has under his execution a statute title, where the directions of the statute have been sufficiently observed. But the evidence must be in writing, sanctioned by the officer intrusted with the levy. An uncertainty or mistake in any circumstance essential to a sufficient description of the estate extended upon, or an omission from the return of any essential requisite in the proceedings directed by the statute, is fatal to the title, and renders the extent void. (2)
These rules apply in all questions that can arise between the creditor and debtor, and all persons claiming under them respectively, concerning a title gained by an extent upon real estate to satisfy an execution upon a judgment in a personal action. But where the question is with one not a party to the execution or judgment, and not claiming by a privity of title, there is nothing conclusive or effectual in the sheriff’s return. The title or seisin of a third person is not affected by it. • Where an actual entry and seisin are proved, a return may be evidence of the boundaries of the land possessed by the occupant, when he relies upon a title by disseisin ; but it is not in that case evidence, certainly not uncontrollable evidence, of an actual seisin against the lawful owner, not the debtor in the execution, or claiming under his title.
* The oiily question left undecided upon this contro- [ * 166 ] versy was, whether the premises demanded in this action were the land and property of William Creed; the demand-ant’s title being the extent of an execution upon a judgment recovered by him against Creed.
The case is now brought before us, by exceptions for the tenant to the decisions and directions at the trial, which has been had subsequent to the decision which has been mentioned. The question of a title by. disseisin in the demandant is not again brought up by the exceptions. It seems to have been taken, as proved at the trial, *158 that the title of the lot of land in controversy was regularly deduced to Creed, and was in him when the demandant’s execution was levied; and therefore a seisin was gained to him by the levy. And we should readily concur in the direction given to this effect, if we were satisfied that the title to the demanded premises was in Creed; and also — which is equally essential — that the lot in question was then extended and appraised.
The construction of the deed from Thomas Porter to Creed, by which the title is supposed to be acquired by him, and of the words of the extent, by which the same title is supposed to have been transferred to the demandant, is all that is now important to be considered. There is the same mistake in the deed and in the extent, in describing the land conveyed and extended. By the deed of Porter to Creed, there is conveyed to him two rights or shares of a township called Bridgeton, including the lots Nos. 3, &c., with the common and undivided lands that may be laid out to the original right of James Bridges; also the lots No. 9 in the 10th range, and Nos. 7, &c., with the common and undivided lands that may be laid out to the original right of Joseph Hale. In the extent of the demandant’s execution, the lands set off are described in the same, or nearly the same, words: the description certified by the appraisers seems to have been taken from the deed. Now, it happens that lot No. 9 in the 10th range was not a just description of any lot drawn or assigned, either to the right of Bridges, or to the right of Hale; but a lot answering to that number and [ * 167 ] description was drawn and * assigned to the right of one James Chandler; and lot No. 9 in the 9th range was probably the lot intended to be conveyed, as a lot answering to those numbers was drawn and assigned to the right of líale.
The lot No. 9 in the 10th range is the lot demanded. Did that lot pass by the deed, or by the extent ? What would be the construction, if Porter, at the time of his conveyance to Creed, had been the owner of Hale’s right, and had had no interest or claim in Chandler’s right, or in any part of it? Would the purchaser succeed in an action of covenant, upon an averment that lot No. 9 in the 10th range had been conveyed to him, of or in which his grantor had no seisin or title ? or, in the same case, would the grantor be entitled to retain lot No. 9 in the 9th range against the purpose and intention of the parties, and what might be considered the legal operation of the deed made and accepted between them ?
We conceive, and our brother, upon further consideration, concurs with us in this opinion, that the mistake in the detail would be corrected by the more general and perfect description of the premises intended to be conveyed. The rights of Bridges and of Hale¡ *159 the lots drawn and to be drawn or assigned to those rights, express sufficiently and completely the intentions of the parties in the purchase and conveyance, of which the deed is the regular evidence; and a mistake, in an unnecessary or superfluous detail of the numbers and ranges of the lots, will not be sufficient to operate against those intentions, and so far defeat the deed.
The general rule is, that a construction shall always be made oí words, if it can be, to support that which seems to be the intent of the parties; also general words are not restrained by restrictive added ex majori cautela, or by affirmative words more restrictive, but which have no tendency to render a general description arnbig uous or uncertain. (3) Now, in the case supposed, the intention, under all the circumstances, would be too apparent to be questioned; and there would be no uncertainty or doubt excited by words restrictive and affirmative, in which a mistake occurs that has * not the slightest tendency to render the pur- [ * 168 ] poses of the writing ambiguous. The intent of conveying all the lots which had been assigned to the rights conveyed is clearly expressed: the intent of conveying a lot not assigned to those rights is as clearly excluded, by the general description of the premises intended to be conveyed.
The fact, therefore, attempted to be proved by the other evidence admitted at the trial, that Porter, when he conveyed to Creed, was also the proprietor of Chandler's right, makes no difference in the construction of the deed in question. Supposing Porter's title to Chandler's right maintained by the evidence, it only proves that he had a lawful right and authority to convey the demanded premises, and not that he had exercised that right; or that Creed had purchased, or Porter had conveyed, a lot which no one had recognized as within the description, by that deed, of the lands conveyed, that being a deed of Bridges' and of Hale's rights, and of the lots assigned upon those rights, and of those only; although, in the enumeration, .another lot, by a mistake in the number of the range, is mentioned as a lot assigned to Hale's right, which, in fact, had been assigned to Chandler's right. All intention of conveying any lot in Chandler's right is excluded by the tenor of the deed. The mistake in this case, although less in amount, so far as the variance from the truth is concerned, is not unlike the mistake which had occurred in the case of Worthington & Al., Exrs., vs. Hylyer & Al, (4) decided by this Court; and that case fully warrants the present decision, as to the legal operation of the deed from Porter to Creed. That deed must be construed to convey, in the *160 intentions of the parties, lot No. 9 in the 9th range, and i.\ol lot No. 10 in the 10th range.
The same construction must be, and would be, given to the words of the extent, descriptive of the lots and rights of land taken by the execution as Creed’s.
Without deciding, therefore, upon the title deduced under a deed from the committee of Bridgeton to John Flint, and from [ * 169 ] him to William Creed, or upon the comparative * merits of that with the title proposed to be deduced by deeds, offered in evidence and rejected at the trial, from another committee of Bridgeton to Enoch Perley, and wholly upon the ground that, in every view of the case suggested by the evidence admitted or offered at the trial, there is no evidence of a title of William Creed in the premises demanded, when the demandant’s execution was levied, we decide for the tenant in the case at bar. The extent gave no seisin, by right or by wrong, to the demandant of land of which Creed, the debtor in the execution, had no lawful or actual serin.
Upon the exceptions filed, and which have thus far prevailed, we can now only order the verdict set aside, and give the tenant a new trial upon his motion; and that is the order of the Court to be entered. But we would observe that we see no point left undecided, of which the demandant can expect to avail himself upon a new trial.
After judgment was pronounced, the demandant became nonsuit

 Currington vs. Coring, 6 Mass. Rep. 368. — Winslow vs. Loring, 7 Mass. Rep. 392. — Wellington vs. Gale, 13 Mass. Rep. 483. — Slayton vs. Chester, 4 Mass. Rep. 478. — Bott vs. Burnell, 9 Mass. Rep. 96. - - Estabrook vs. Hapgood & Ux. 10 Mass. Rep. 313. — Bean vs. Parker, 17 Mass. Rep. 591. — Inhab, Boston vs. Tileston, post, 468. — Lawrence vs. Pond, 17 Mass. Rep. 433.— See note to Estabrook vs. Hapgood, 10 Mass. Rep. 315.

 4 Co. 74.— Cro. Eliz. 584. — 9 Mass. Rep. 92. — 8 D. & E. 113, 284.

 Com. Dig., Paroles, A, 23.

 4 Mass. Rep 196.