WILSON vs OWENS.

Opinion delivered January 30, 1897.

*Ejectment Statute of Arkansas Adopted.*

The Chapter of Mansfield's Digest, entitled " Ejectment " was adopted in the Indian Territory by the Act of Congress of March 1, 1889, providing that Rev. St. U. S. chapter 18, title 13, shall govern such court as far as applicable, provided that the practice, pleadings and proceedings in civil causes shall conform, as near as may be to the practice, pleadings and forms of proceedings existing at the time in like cases in the courts of record of the state of Arkansas.

*Ejectment—Repeal by Implication.*

The effect of section 13, of the Act of 1895, was to leave in effect all of the laws of Arkansas as well as Acts of Congress theretofore put in force in the Indian Territory, except when in conflict with the last named act. *Held*, that the ejectment statute of Arkansas was not in conflict with such act and was not repealed by implication.

### 3. *Performanee of Contract—Time.*

Defendant agreed to enclose certain unimproved lands and to erect certain improvements thereon, in consideration of the use and occupancy of the land for seven years. This time was afterward extended for two years. *Held*, that defendant had until the expiration of his term in which to make the improvements.

### 4. *Pleading and Proof—Variance.*

When plaintiff in ejectment pleads possession but his proof shows only a right of possession, it is not a variance and he may recover.

### 5. *Statute of Frauds.*

A contract made before the adoption of a statute of frauds, but to be performed afterwards, is not affected by the provisions of such statute.

Appeal from the United States Court for the Southern District.

C. B. KILGORE, Judge.

Action in ejectment by J. B. Wilson against Sol E. Owens. Judgment for defendant. Plaintiff appeals. Affirmed.

Plaintiff's grantor leased a tract of land in the Cherokee Nation to defendant for a term of seven years. Plaintiff bought the land with knowledge of these facts, and consented to the execution of a written lease, before the conveyance was made, by which defendant's term was extended for two years. Plaintiff brought suit in ejectment alleging that he was in possession of said premises on the 1 day of January, 1895, and had been entitled to possession ever since then. That he had been ousted by defendant and that said defendant was unlawfully holding possession from plaintiff. Defendant specifically denied each and every

allegation in plaintiff's complaint. The proof showed that plaintiff had never been in possession, but had a right to possession. There was a trial and verdict for defendant, from which plaintiff prosecutes this appeal.

*Hocker & Woods*, for appellant.

*Davidson & Carter*, for appellee.

LEWIS, J. Before considering the errors assigned by plaintiff in error, we are confronted by the question, which has frequently arisen in the trial courts of this territory, whether the action of ejectment as prescribed by the Arkansas statute obtains in this jurisdiction. The requisites, incidents, and procedure of this action are not contained in chapter 119, entitled "Pleading and Practice," of Mansfield's Digest, but in chapter 55 thereof, entitled "Ejectment." By section 6 of the act of congress approved March 1, 1889, establishing a United States Court in the Indian Territory, is enacted " that the provisions of chapter 18, title 13, of the Revised Statutes of the United States shall govern such court so far as applicable: provided, that the practice, pleadings and forms of proceeding in civil causes shall conform, as near as may be, to the practice, pleadings and forms of proceedings existing at the time in like cases in the courts of record of the state of Arkansas, any rule of court to the contrary notwithstanding. And the plaintiff shall be entitled to like remedies of attachment or other process against the property of the defendant and for like causes as now provided by the laws of said state." By section 31 of the act of congress approved May 2, 1890, it is provided that certain laws of Arkansas, contained in Mansfield's Digest, shall be extended over and put in force in the Indian Territory, when not locally inapplicable or in conflict with that act or any law of congress relating to the subjects mentioned. Among the

laws thus adopted was the chapter in Mansfield's Digest en-
titled "Pleading and Practice," and other laws relating to
remedies and proceeding, but the chapter entitled "Eject-
ment" was not adopted.  By section 13 of the act of con-
gress approved March 1, 1895, it is enacted "that none of
the provisions of any other acts or of any of the laws of the
United States or of the state of Arkansas, heretofore put in
force in said territory, except so far as they come in conflict
with the provisions of this act, are intended to be repealed
or in any manner affected by this act; but all such acts and
laws are to remain in full force and effect in said territory."
We think it beyond question that the action of ejectment, as
prescribed by the statutes of Arkansas, was adopted in the
Indian Territory by the act of 1889.  The language of the
act, as above set out, is substantially the same as that used
in section 914, c. 18, tit. 13, of the Revised Statutes of the
United States, whereby it is provided that the practice
pleadings, and forms and modes of proceeding in civil
causes in the United States Courts shall conform as near as
may be to the practice, pleadings, and forms and modes of
proceeding existing at the time in like causes in the courts
of record of the respective states.  Construing this statute
it is held that the state mode of trying title to land must be
followed in Federal Courts, and that a state statute, abolish-
ing fictitious proceedings, and establishing an action of tres-
pass to try title to lands, fixes the mode of proceeding in the
Federal Court sitting in the state.  Sears vs Eastburn, 1
How. 188.  But it has been suggested that the ejectment
statute of the Arkansas laws was, by necessary implication,
repealed by the act of 1890, on the principle that the desig-
nation in that act of certain other laws of Arkansas as
adopted was the exclusion of the ejectment statute from
adoption.  The principle invoked is pressed too far.  It is
proposed through it, not simply to exclude the ejectment
statute from adoption, but to effect its repeal,—a totally

different thing. Repeals by implication are not favored. If the later and the earlier act can both have force and effect, a repeal by implication does not result. To warrant this, the repugnancy must be irreconcilable. Sedg. St. & Const. Law, p. 97 et seq. An act which gives cumulative and not inconsistent remedies, and especially one which embraces cases not covered by the former legislation, does not repeal prior statutes upon the same subject-matter. Id. 100. Tested by each one of these approved canons of construction, a repeal in this instance cannot be claimed. Every provision of the law of 1890 can have force, and "ejectment" remain by virtue of the law of 1889. The repugnancy, instead of being irreconcilable, is nonexistent. If there were remedies given by the later law not contained in the first, they are cumulative remedies. This is the clear effect of the act of 1890. Instead of repealing the provision that the practice, pleadings, and forms of procedure should conform to the laws of Arkansas, it adopted the practice act of Arkansas by name, together with many other laws of Arkansas not before in force. It is an amplifying, instead of a repealing, statute. Furthermore, a repeal by implication, through the enumeration of certain statutes of Arkansas, is urged, in the light of the condition expressed in the act adopting them, viz.: "When not in conflict with any law of congress relating to the subjects mentioned." It is perfectly clear that the laws of Arkansas adopted by the act of 1890, subject to this limitation, instead of abridging, must yield to any provision of the act of 1889 with which they may be in conflict. Passing this contention, the effect of section 13 of the act of 1895 was to leave in force all laws of Arkansas, as well as all acts of congress theretofore put in force in the Indian Territory, except when in conflict with the last named act. There being no conflict in any provision of said act and the ejectment statute as contained in Mansfield's Digest, we conclude that such statute is in force in this jurisdiction.

*Ejectment statute in force.*

Defendant in error contends that the errors assigned by plaintiff in error are immaterial, for the reason that plaintiff in error was not entitled to recover, because in his <span>Pleading and Proof. Variance.</span> complaint he alleged that he was in possession of the premises in controversy when ousted, and his proof failed to sustain this allegation, but only tended to show that he was entitled to possession. This contention is without merit. Mansf. Dig. §§ 2627-2635; Newel, Ej. 235-245.

It is shown that the plaintiff in error, who is a member of the Chickasaw Nation, in the year 1888, made a contract with one Polk Kendall, a citizen of the United States, by which the said Kendall agreed to inclose certain unimproved and unoccupied lands in the Chickasaw Nation, to put a certain amount into a state of cultivation, to build houses thereupon, to dig a well, and to make other improvements, in consideration of which he was to have the use of the land as a tenant of the plaintiff in error for a period of time; there being a controversy as to whether he was to have it for a period of seven years, or until he could make seven crops thereon. There was also a conflict in the testimony as to the extent, character, and value of the improvements to be made. The contract was verbal. Afterwards, in 1889, the defendant in error bought out Kendall and assumed his obligations under the contract, and in the same year plaintiff in error entered into a parol agreement agreement with the defendant in error by which the latter was to have two years' additional occupancy of the premises after the expiration of the time fixed by the Kendall contract. There was a controversy as to the considerations of this agreement, plaintiff in error alleging that defendant in error was to put in cultivation 50 acres of land in addition to what had been agreed in the Kendall contract, and defendant contending that it was in consideration that he would buy out the rights of one Wilkinson under a similar contract with plaintiff in error. Plaintiff in error introduced proof to

show; not only the terms of the contracts, but that the improvements agreed to be made thereunder had not been made. Defendant in error introduced proof as to the terms of the respective contracts, and tending to show a fulfillment of the same by him. With reference to the issue of performance thus engendered, the jury, after they had been instructed by the court and had retired for deliberation, returned into court and propounded the following inquiry : "The jury wants to know how long the defendant had in which to put the improvements on the place,—seven or nine years." The court replied as follows : "My theory is that *Instruction.* the defendant had the full nine years in which to complete the improvements on the place in controversy,"—to which instruction of the court exception was reserved, and error assigned. Contracts of the character under consideration have been customary in all of the five civilized tribes. Under them much the larger part of the lands in the Indian Territory now in cultivation were changed from their wild state to their present condition. These contracts were beneficial to the Indian, who, through them, saw the wilderness transformed into farms ready for his enjoyment. They were beneficial to the "noncitizen" tenant, who, by his toil in clearing away the forest and breaking the sod, secured the fruits of the land for a period. They are not open to the criticism that, under them, "the owner was improved out of his estate;" for, being made with reference to unoccupied land, and ownership to the extent permitted by the Indian law resting upon occupancy, their effect was rather to improve the landlord into ownership of an estate, as well as to improve the land in value. They were the development of strange conditions and of stranger laws and land tenures. results that the questions arising with reference to them cannot always be solved in the light of an apt precedent, nor always justly determined by rigid adherence to rules that have come from different systems of law and tenure.

These contracts for the improvement of lands clearly create between the parties the relation of landlord and tenant. The obligations to make improvements are terms of the contract. Where the length of the lease is fixed by the agreement, but the time within which the improvements are to be made is not stated, it is not perceived why the ordinary rule of law, that performance must be had within a reasonable time, should not apply: What would be a reasonable time must depend upon the character of the improvements, the condition of the land, the extent of the undertaking, and the varions circumstances surrounding the parties and the subject-matter of the contract. These considerations may be readily apprehended, and are to be kept in mind in determining what is a reasonable time for the making of the improvements stipulated. It can be seen that, where the party has agreed to cut down the trees from a large body of raw land, and to put it in a state of cultivation, the failure to do this within a single year might not be regarded as a failure to perform, within a reasonable time, the things agreed. On the other hand, where a tenant under such a contract had stipulated to do certain work, in consideration of which he was to have, for a period of years, the use of the land, and had made such improvements as he desired for his own benefit, it might frequently happen that he would omit to make all the improvements called for by the contract, unless the landlord had a remedy against him for default, before the expiration of the lease term. It is just to require him to perform his contract within a reasonable time. If he fail to perform all the terms of his agreement within such time, what is the result? Does his failure discharge the contract, and authorize the landlord to treat it as recinded, and to bring ejectment for the land, notwithstanding the contract, in many of its stipulations, may have been complied with? Or will the failure to perform the contract in its entirety within the time fixed, or, in the absence of a stipulation

within a reasonable time, simply sustain an action for damages for the breach of the conditions unperformed? Mr. Lawson, in his work on Contracts, in discussing the subject of discharge by breach, says: "But where the breach of contract by B. does not make the contract wholly incapable of performance, or is not accompanied by any overt expression of intention to abandon his rights, the question is whether A. is thereby discharged, or whether he merely acquires a right of action from the breach. This can be answered only by examining the terms of the contract, and endeavoring to ascertain the intention of the parties as to whether the premises were independent of or conditional upon one another. The promise may be independent in three ways, viz. by being absolute, divisible, or subsidiary. Where the promise is divisible,—that is, where it is susceptible of more or less complete performance, and the damage sustained by the incomplete performance of partial breach may be apportioned according to the extent of the failure,— the promise is, in fact, regarded as a number of promises to do a number of similar acts, and a breach of one or some of these does not discharge the promisee. Where the promise is subsidiary,—that is, where the breach by one of the parties is a breach of a term of the contract only, and of a term which the parties have not, upon a reasonable construction of the contract, regarded as vital to its existence,—the same result follows. The injured party is bound to continue his performance of the contract, but may bring an action to recover such damages as he has sustained by the default of the other. It seems to be agreed by all courts that the right of rescission may be exercised on failure to perform a part or installment of the contract, first, where, by the express terms of the contract, performance of each stipulation is made a condition precedent to the continuing obligations of the contract, or where it is evident, from the nature and circumstances of the case, that the performance of each stipula-

tion was an inducement to the contract, and so goes to the root of the matter as to make its performance a condition of the obligation to proceed in the contract." Lawson, Cont. p. 485 et seq. These principles have been most frequently applied in contracts of sale, but we think them applicable to the contract under consideration,—that the promise to make improvements is divisible, and that the damage sustained by an incomplete performance may readily be apportioned and recovered as such. This rule is better adapted to secure justice in this class of contracts than to hold that the failure to perform any, however slight a part, of the obligation, should result in the forfeiture of all that had been done. Forfeitures are always uneven in result, and rarely equitable. Where parties have, in this class of contracts, by express stipulation or by words importing a clear intent, agreed that a breach of any divisible promises should result in a discharge from the contract, such stipulations will be enforced; but they will not be indirectly inferred. We conclude that under the evidence, the court did not err in its instruction, but that, on the contrary, it might have directed a verdict for the appellee.

*Instruction sustained.*

It is suggested that the testimony of the appellant shows that the agreement for an extension of the term was based upon the condition precedent that the improvements promised by appellee should be made before the expiration of the Kendall term. It is not apparent, from his evidence, that it was the intention of the parties that a failure to make all the improvements within this time should discharge the contract and forfeit the improvements made. Unless such intent is expressed in or clearly manifest from the contract failure to make all improvements within the time stipulated gave only a right of action for damages for breach of the promises unperformed.

*Statute of Frauds.*

The contracts relied upon were not within the statute of frauds. They were made before the adoption of such

statute, and could not be affected by it. McClellan vs Pyeatt, 14 C. C. A. 140, 66 Fed. 846.

The other errors assigned become immaterial, in view of the conclusion that the appellant did not show a right to recover by his own testimony. We have not considered the effect of the Chickasaw lease law upon the contract, because such law was not suggested nor question made thereon in the trial court. The judgment is affirmed.

SPRINGER, C. J., concurs.