HOCKETT, ET AL. VS ALSTON.

Opinion delivered October 6, 1900.

*1. Indian Lands—Status of Rejected Citizenship Claimant—*

Defendant, in an ejectment suit, bases her claim to the land in controversy, upon her acquisition of title by purchase, while contending for recognition as a citizen of the Cherokee Nation. This claim was passed upon and rejected by the Dawes Commission and United States Court for Northern District, and by the Supreme Court of the United States. *Held*, that her status is that of a non-citizen; and as such she can acquire no title to land in the Cherokee Nation by purchase.

*2. Indian Lands—Occupancy Rights of Non-Citizens—Who Intruders.*

Under the ruling of this court in the case of Case vs. Hall 2 Ind. Ter. Rep. 8, a non-citizen cannot legally occupy any lands in the Cherokee Nation except with the consent and acquiescence of a citizen of said Nation. The same rule holds good, with the exception of the equities in improvements, and in town lots provided by the Act of Cong. June 28, 1898, known as the "Curtis Bill". The defendant herein, not claiming an occupancy right by virtue of the consent of a citizen, nor any equity by reason of improvements under the "Curtis Bill", is, therefore, an intruder.

3. *Ejectment—Indian Lands—Evidence of Plaintiff's Title.*

In an action of ejectment brought by a citizen of Cherokee Nation against an intruder, to recover lands which plaintiff had purchased at Sheriff's sale under an Act of the Cherokee national council, approved September 30, 1895, it was not error to permit the introduction in evidence of the printed poster notice of sale and connect the defendants with it, as the defendants can be considered only as intruders and trespassers, with notice, and it was only necessary for plaintiff to establish a prima facie title, and the certificate of purchase was sufficient for this as against these defendants.

4. *Indian Laws—Courts will not Take Judicial Notice.*

Where, in an action of ejectment to recover possession of Indian lands purchased at Sheriff's sale under an Act of the Cherokee National Council, the defendant contends that such sale was not made in conformity with the laws of the Cherokee Nation, the provisions of such laws should have been pleaded and proved as the courts will not take judicial notice thereof, but rather place them on the footing of local usages and customs.

5. *Ejectment—Description, in Certificate of Purchase, Sufficient.*

The description of land sold by the Sheriff under an act of the Cherokee national council, appearing in the certificate of purchase, on which plaintiff bases her suit in ejectment against the occupant of such lands, which describes the property as that "known as the 'Fred Hockett farm,' about three and one-half miles northeast of Wagoner, I. T." describing the improvements thereon, is sufficient on which to base a judgment.

6. *Ejectment—Instructions—Not Considered if Not in Record.*

When it does not appear from the bill of exceptions what the charge of the court, on which appellant bases a claim of error, consisted of, it is impossible for this court to say whether the instructions complained of were erroneous, and such assignments of error will not be considered.

7. *Ejectment—Verdict—Jury May be Returned to Find New Verdict.*

Where the court directs the jury to find a verdict for the plaintiff, and instructs them to find, from the evidence, the rental

(29)

value of the premises, which is wholly uncontradicted, and the jury returns a verdict for the possession of the premises and "$1.00 as damages", it is not error for the court to send the jury back to bring in a verdict in accordance with the evidence, which established the rental value of the premises as $50.00.

8. *Ejectment—Protection of Curtis Bill as to Value of Improvements not Available to Trespassers.*

The provisions of Act of Cong. June 28, 1898, known as the "Curtis Bill" providing for the assessment of value of the improvements of defendant in an ejectment suit to recover possession of Indian lands, and requiring the payment of same by plaintiff in money or in use of the land before defendants will be ejected from the premises, is of no avail to persons not in possession with the consent of an Indian citizen, but who are, therefore, intruders and trespassers.

Appeal from the United States court for the Northern district.

WILLIAM M. SPRINGER, Judge.

Ejectment by Sarah C. Alston against Fred Hockett and others. Judgment in favor of plaintiff. Defendants appeal. Affirmed.

This is an action of ejectment commenced on the 19th day of February, 1898. The plaintiff alleges that she is a citizen of the Cherokee Nation or Tribe of Indians, and that she is the owner and entitled to the possession of the improvements in controversy; that the land upon which the improvement is situated is the property of the Cherokee Nation; "that on the 30th day of August, 1897, said improvement was sold to this plaintiff by J. C. Ward, sheriff of Cooweescoowee district of the Cherokee Nation of the Indian Territory, under an act of the national council of the Cherokee Nation approved September 30, 1895, as an intruder im-

provement"; that said sheriff delivered to plaintiff a certificate of purchase as follows: "Wagoner, I. T., August 30,1897. Sold to Sarah Carlton Alston the following described intruder improvements, know as 'Fred Hockett Farm,' about three and one-half miles northeast of Wagoner, I. T.: One frame house 16x32, stables, and other outer buildings; about 100 acres in cultivation,—for the sum of eight hundred and ninety-five ($895 00) dollars. First installment paid,—one hundred and forty-nine $\frac{20}{100}$ ($149.20) dollars. Sold under an act of the national council approved September 30th, 1895. J. C. Ward, Sheriff Cooweescoowee District, Cherokee Nation, by J. W. Leach, Deputy." Plaintiff further alleges that defendants are in the unlawful possession of said land; that plaintiff has the lawful title, and has been legally entitled to the possession since August 30, 1897; that plaintiff has demanded possession from the defendants, which they have refused to surrender. Plaintiff asks judgment for possession and damages. On the 15th day of September, 1898, defendants filed an answer to plaintiff's complaint. They admit that plaintiff is a citizen of the Cherokee Nation or Tribe of Indians, but deny that the plaintiff is the owner and entitled to the possession of the improvement in controversy. They admit that the land upon which the improvements are situated is the property of the Cherokee Nation. They deny that a sale was made on the 30th day of August, 1897, of the land and improvements in controversy by J. C. Ward, sheriff of Cooweescoowee district, Cherokee Nation, by which defendants were deprived of their good and lawful title to their said land and improvements, and their legal right to the possession of the same against a pretended claim of the plaintiff and of all other persons claiming or to claim. They allege that the act of the national council of the Cherokee Nation approved September 30, 1895, under which the sale was made, was null and void because it contravened the constitution of the Cherokee Nation, and was in

conflict with the terms of the treaties between the Cherokee
Nation of Indians and the government of the United States,
and further say that, if said act was a good and valid law, its
provisions were not complied with by the said Ward, sheriff:
that said pretended sale of said improvements was null and
void, for the same was not made in conformity with the pro-
visions of said law. They further allege that, even if said
enactment of the national council was in all respects valid,
the same was in no way applicable to the defendants, as
they were in no proper sense intruders in the Cherokee
Nation, but were, as they aver and insist, bona fide citizens
thereof, according to law. Deny that they are in the un-
lawful possession, or that they have damaged the plaintiff.
On December 10, 1898, the defendants filed an amendment to
their answer. They deny that plaintiff was entitled to the
possession of the land and improvements at the commence-
ment of this action. State that the defendants Fred Hockett
and Agnes Hockett purchased a part of said property from W.
H. Marsh, and that said Marsh located said premises, which
was at the time of said location a part of the public domain
of the Cherokee Nation, and that said Marsh was a citizen of
the Cherokee Nation or Tribe of Indians, and had a right to
locate and segregate from the public domain said property.
They state that about the 3d of September, 1898, defendants
Fred Hockett and his wife, Agnes G. Hockett, purchased
the remainder of said improvements from R. C. Parks, who
had previously purchased the same from said W. H. Marsh.
Say further that they have no knowledge or information
sufficient to form a belief as to whether said improvements
were sold to said plaintiff by Ward, sheriff of Coo-
weescoowee district, or not, under the act approved
September 30, 1895. State that since purchasing said
premises they have made valuable improvements there-
on, and that at the time of said purchase, and ever since
then, defendant Agnes G. Hockett believed, and still be-

lieves, that she was a member of the Cherokee Tribe or
Nation of Indians, and entitled to all the privileges and pro-
perty rights of citizens of said nation; that said nation deny
her right to citizenship and that her right to citizenship
was presented to the Dawes commission; and that said com-
mission, after hearing said cause, rendered its judgment
against her; that thereupon she appealed to the district
court for the Northern district; who, after hearing the cause
rendered its judgment against her; that she appealed from
said judgment to the supreme court of the United States,
where she alleges the cause is now pending. They allege
that at the time they put the improvements upon said pro-
perty they believed the defendant Agnes G. Hockett was a
citizen of said nation, and that she would be entitled to her
allotment in said nation. Defendants therefore claim that
they are entitled to the possession of said premises until the
31st day of December, 1898, and until the supreme court of
the United States shall pass upon the right of the defendant
Agnes G. Hockett to citizenship in said nation. On the
13th day of December, 1898, the said cause was tried to a
jury. At the conclusion of the evidence, plaintiff moved the
court to instruct the jury to return a verdict for the plain-
tiff for the possession of the land in controversy, and for
the rental value of said place for the year 1898; and defen-
dants, by attorney, moved the court to instruct the jury to
return a verdict for the defendants, which motion of the de-
fendants was by the court overruled, to which defendants
excepted. The motion of plaintiff, on being heard, and by
the court being fully understood, was sustained by the court,
to which the defendants excepted. The jury, having heard
the evidence and the instruction of the court, returned the
following verdict: ''We, the jury, find that the plaintiff is the
owner and entitled to the possession of the premises in con-
troversy, and assess her damages at fifty dollars. W. L.
Corathers, Foreman.'' On the 14th day of December, 1898,

the defendants filed their motion for a new trial, and on the same day the court overruled said motion, and defendants appeal to this court.

*G. P. M. Turner* and *Marcum, Bailey & Owen,* for appellants.

*Hutchings & West* for appellee.

TOWNSEND, J. Counsel for appellants ·in his brief adopts as his assignments of error the grounds set up in appellants' motion for new trial in the court below,—12 in number,—which are in substance as follows: ·(1) Because the verdict is contrary to the law and the evidence. (2) Because of the refusal of the court below to permit Agnes G. Hockett to testify that she had prior to the year 1889 been admitted to citizenship in the Cherokee Nation, and in holding that the action of the Dawes commission, subsequently affirmed by the United States court for the Northern district of the Indian Territory, was conclusive of the status of said Agnes G. Hockett as to her citizenship in said nation. (3) Because the court erred in admitting in evidence the purported certificate of purchase issued to plaintiff by J. C Ward, sheriff, because same did not conform to the provisions of the Cherokee law. (4) Because the court erred in admitting in evidence the printed poster notice of sale of the premises in controversy. (5) Because the court erred in holding that defendants were intruders, and thereby precluded them from asserting their right to the property in controversy, or to payment for improvements placed thereon by them in good faith, and thereby prevented them from availing themselves of the provisions of the act of June 28, 1898 (Ind. T. Ann. St. 1899, c. 3a,) known as the "Curtis Bill." (6) Because the court erred in charging the jury as to the law, and directing a verdict for

the plaintiff, and refusing to direct a verdict for defendants (7)  Because the court erred in directing  the jury to  bring in a new verdict in accordance with  the evidence, on  motion of the plaintiff, after  they had  returned a  verdict,  and  the. refusal of the court to receive                    .dict.

The muniment of  title upon which  Sarah  C.  Alston bases this action in  ejectment is the. certificate of  purchase issued to her by Ward,  sheriff, set out in the  statement  of facts, supra, in pursuance of a  sale of certain  intruder  improvements in the Cherokee Nation, among  which were the improvements involved  herein.    It appears from the record that the sale was duly  advertised, and that  the  defendant Fred Hockett was apprised of it; that defendants were United States citizens, and  that defendant Agnes  G.  Hockett was an applicant for  citizenship  in the  Cherokee  Nation,  but that her right to citizenship in said  nation had been  denied by the Dawes  commission, and  afterwards, on  appeal,  by the United  States  court for the  Northern  district  of the Indian Territory; and that  said case had been  appealed  to the supreme court of the United States.    In  our opinion,  it clearly appears from the pleadings,  supra, and evidence in this case, that the defendants  are trespassers and  intruders on the domain of the Cherokee  Nation, and  that  whatever rights Agnes G.  Hockett sought to acquire  in the  premises by virtue of  her alleged citizenship  in the Cherokee  Nation were finally adjudicated and determined by the supreme court of the United  States on  her citizenship appeal,  denying her citizenship in the Cherokee  Nation, and affirming the  decision of the lower  court.    See Stephens  vs Cherokee  Nation. 174 U. S. 445, 19 Sup. Ct. 722, 43 L.  Ed. 1041.    The status of defendants, therefore, being that of noncitizens, what property rights can they  acquire in  the  Cherokee Nation, as against a citizen of  the Cherokee  Nation?    This  court  held in Case vs Hall, 2 Ind. Ter. Rep. 8 ( 46 S.  W.  180,) that a noncitizen of the Cherokee Nation could not acquire any title by

*Rejected citizenship claimants are intruders.*

*Occupancy rights of intruders.*

purchase to land in said nation, nor could he legally occupy any land therein, except with the consent and acquiescence of a citizen of the Cherokee Nation. This is still true, except in so far as a noncitizen may acquire equities in improvements and town lots under the act of June 28, 1898 (Ind. T. Ann. St. 1899, c. 3a), known as the "Curtis Bill." That question, however, is not raised in this case; nor does it appear from the record that the defendants Hockett and wife were in possession of the premises in controversy, holding them under a citizen of the Cherokee Nation. On the contrary, it clearly appears from the answer of defendants, supra, and the evidence in the case, that the defendants were asserting title to the premises by virtue of the alleged citizenship of Agnes G. Hockett, whose status at that time had been determined adversely by the commission to the Five Civilized Tribes, and the United States court for the Northern district of the Indian Territory; and subsequently, since the pendency of this appeal, the decision of the lower court has been affirmed by the supreme court of the United States. Stephens vs Cherokee Nation, Id.

**Evidence of plaintiff's title in ejectment proceedings.** It is contended by the appellants that the court below erred in admitting in evidence the printed poster notice offered by plaintiff, advertising the sale of defendants' improvements by the sheriff of the Cherokee court, on the ground that the notice did not set forth the proceedings sufficiently to apprise the defendants that they had been deprived of their property by any authorized judgment of a court, or that the sale was in accordance with the statute. The defendant Fred Hockett testified that he had seen the notice posted up in the post office, and that it, in part, described the property in question. The law in this jurisdiction, as heretofore stated, is settled that a noncitizen cannot acquire title to any improvements in the Cherokee Nation, except with the "consent and acquiescence" of an Indian citizen. It appears that the appellants were not

occupying the premises in controversy with "consent and acquiescence" of an Indian citizen, and we think that the appellants must be charged with notice that they were occupying said premises unlawfully and without color of title. While we do do not think it was necessary, in order to charge the appellants with notice of the sale, for the plaintiff to offer in evidence the printed poster notice complained of, and connect the appellants with it, still we do not think the trial court erred in admitting the same in evidence. It being clear, therefore, that the defendants cannot be considered other than as trespassers and intruders on the domain of the Cherokee Nation, with notice of the sale of the premises involved, it only remains to consider whether the plaintiff had sufficient title upon which to predicate this action in ejectment against the defendants, and whether the court below committed error in admitting certain evidence offered by plaintiff, objected to by defendants, and directing the jury to return a verdict for plaintiff.

It is a universal rule in ejectment that the plaintiff must recover upon the strength of his own title, and not upon the weakness of that of his adversary; and in this case the plaintiff asserted as her title the certificate of purchase of the Sheriff, supra. The defendants object to the introduction of this certificate of purchase upon the ground that it did not sufficiently describe the improvement sought to be conveyed, and, further, that it did not appear that the sale was in compliance with the Cherokee law, and that there was no proof of the act of the Cherokee council under which the sale took place. This objection was properly overruled by the court below, but the ruling of the lower court is assigned as error by appellants, in the following language: "Because the court erred in its action sustaining the objection interposed by the plaintiff to the testimony offered by the defendant to prove that the alleged sale of the premises here in controversy was irregu-

lar and void for the reason that the same had not been ordered by the decree or judgment of any court of competent jurisdiction, and the same was not made in conformity with the provisions of the act of the Cherokee national council by virtue of which it was assumed and pretended to have been made." The record does not disclose the facts as stated in the foregoing assignment of error. It does appear in the record, however, that the court admitted in evidence the certificate of purchase, and overruled the objection of the defendants below thereto; but it nowhere appears that the defendants below offered to prove that the alleged sale was irregular and void, or that the same was not in conformity with the provisions of the Cherokee law, or that the court sustained any objection made by plaintiff below to any such offer on the part of defendants. Nor does it appear in the record what the Cherokee law under which the sheriff acted was, and this court has no way of informing itself as to whether the sheriff of the Cherokee court did or did not comply with the provisions of said law in making the sale, and issuing the certificate of purchase to Sarah C. Alston. The appellants should have pleaded and offered to prove what the provisions of the Cherokee law were, and in the absence of any pleading or evidence in the record showing wherein the certificate of purchase of the sheriff contravened the provisions of the Cherokee law, he will be presumed to have acted within the bounds of his authority. This court held in Wilson vs Owens, 1 Ind. Ter. Rep. 163 (38 S. W. 976 ) that the effect of local Indian laws could not be considered on appeal if the question were not raised in the court below; and on appeal from this court the circuit court of appeals for the Eighth circuit said: "We are of opinion that the territorial court of appeals took a correct view of this question. There are a number of tribes domiciled in the Indian Territory, which have different laws customs, and usages. This court does not have convenient

Indian laws must be proven. Courts will not take judicial notice.

access to books, local decisions, or official documents which would enable it to determine with certainty what are the laws of these tribes on various subjects; and we apprehend that the United States courts sitting in the Indian Territory are confronted, in a measure at least, with the same difficulty. Any attempt, therefore, to take judicial notice of the local laws of the various tribes in that territory, would be attended with doubt and difficulty, and would lead to error. We think that it is wiser to place such laws on the footing of local usages and customs, and to require them to be pleaded and proven by litigants who rely upon them for protection, if they are at variance with the code of munincipal law which has been extended over the Indian Territory for the guidance of the United States courts sitting therein. We are of opinion that this view, if acted upon, will in the great majority of cases lead to a more correct and just administration of the law." Wilson vs Owens, 30 C. C. A 257, 86 Fed. 573. It has been repeatedly held that a sheriff's deed is prima facie evidence of title in ejectment, as against a trespasser, and that, "where the plaintiff claims as purchaser under a sheriff's sale made by virtue of an execution against the defendant in ejectment, it is sufficient to show the execution and the proceedings under it." Lawson, Rights, Rem. & Prac. § 3708; 2 Greenl. Ev. (15th Ed.) § 316; Whitaker vs Sumner, 7 Pick. 551; Bott vs Burnell, 11 Mass. 163; Maynard vs Moore, 70 N. C. 546; Lawrence vs Pond, 17 Mass. 433; Jordan vs Bradshaw, 17 Ark. 107; Newton vs Bank, 14 Ark. 10. It has been held in Arkansas that a purchaser of lands from the United States, who obtains a patent certificate, may maintain ejectment under the statute (Surginer vs Paddock, 31 Ark. 529), and that a complaint in ejectment is sufficient which alleges ownership in plaintiff and possession by defendant, and exhibits as evidence of title a deed to plaintiff from the commissioner of state lands (Fagg vs Martin, 53 Ark. 449, 14 S. W. 647). A

*Certificate of purchase prima facie evidence of title.*

purchaser at a sheriff's sale has only to show his deed and the execution under which the land was sold, and will not be compelled in the first instance to trace his title back to the original grantor, but is only required to exhibit so much as will put the defendant to the support of his possession by a title superior to one of a mere naked possession. Hartley vs Ferrell, 9 Fla. 374. "A certificate of purchase of state lands from the state, even though the application and affidavits are defective, confers sufficient title to maintain ejectment." Lawson, Rights, Rem. & Prac. § 3709; Young vs Shinn, 48 Cal. 26; Case vs Edgeworth, 87 Ala. 203, 5 South. 783; Langenour vs Hennagin, 59 Cal. 625. And it has been held that a title which is apparently good is sufficient against a mere trespasser or wrongdoer (3 Wait, Act. & Def. p. 13; Zeringue vs Williams, 15 La. Ann. 76; Davison vs Gent. 38 Eng. Law & Eq. 469), and a defendant in ejectment who shows no title to the lands in dispute cannot take advantage of technical imperfections in the plaintiff's title (McAlister's Lessee vs Williams, 1 Tenn. 334; Zeringue vs Williams, Id.; Tyler, Ej. p. 74). It would seem from the foregoing authorities that a deed from a sheriff in pursuance of a sale is sufficient evidence of title upon which to base the action of ejectment, provided the execution and judgment under which the sale takes place be proven; and in this case it does not appear that the sale took place under an execution and judgment, but that the sheriff proceeded in compliance with the provisions of a Cherokee statute, which do not appear in the record. Owing to the anomalous condition of affairs existing in the Indian Territory, it is oftentimes impossible to solve the various questions which arise therein, in the light of an apt precedent; nor can they always be justly determined by rigid adherence to rules that have come from different systems of law and tenure. Wilson vs Owens 1 Ind. Ter. Rep. 163. We are of opinion that the certificate of purchase issued to plaintiff by Ward, sheriff, sufficiently describes the premises in contro-

versy, and was sufficient upon which to base plaintiff's action of ejectment, and that the court below did not err in overruling defendants' objection to its introduction in evidence.

The appellants' counsel complains that the court below committed error in charging the jury as to the law, and in directing a verdict for plaintiff. It does not appear from the bill of exceptions what the charge of the court complained of was, and, in the absence of the court's instruction, it is impossible for this court to say whether. the instructions complained were of erroneous. We think the evidence abundantly supports the action of the court below in directing a verdict for the plaintiff.

*Instructions not in record not considered.*

Appellants further complain that the court committed error in directing the jury to bring in a new verdict in accordance with the evidence, on motion of the plaintiff, after they had returned a verdict, and in refusing to receive and record the first verdict. It appears from the bill of exceptions that at the conclusion of the evidence the court, on motion of plaintiff's counsel, directed the jury to return a verdict for the plaintiff, "and to find from the evidence. what the rental value of the premises are for the present year." Thereupon the jury returned a verdict in favor of plaintiff for possession of premises, and $1 as damages. The bill of exceptions then recites: "Whereupon counsel for plaintiff moves the court to send the jury back to its room to further consider of its verdict, and to return a verdict in accordance with the evidence, which the court accordingly did, explaining what the evidence was to the jury." The defendants excepted to this action of the court, and afterwards the jury returned a verdict finding that plaintiff was the owner of the premises in controversy, and assessing her damages at $50. The defendants excepted to the court receiving the last verdict, because a verdict had

*Jury returned to find new verdict.*

already been returned by the jury; and appellants' counsel, in his brief, says that the action of the court in sending the jury to its room to return a second verdict was "an unprecedented judicial assumption." We cannot concur with counsel in this view. It appears from the evidence of Dr. G. W. Clelland, a witness for plaintiff, that the rental value of the premises was $50 or $60 per year, and this was the only evidence introduced by either party as to the rental value. Hence we think the court below, on motion of plaintiff's counsel, very properly sent the jury back to its room to bring in a verdict in accordance with the evidence. Thomp. Trials, § 2405; Thayer vs Stevens, 44 N. H. 484; Lathrop vs Sharon 12 Pick. 172; Raymond vs Nye, 5 Metc. (Mass.) 154; Hagar vs Weston, 7 Mass. 110.

The contention of appellants that they were not permitted to avail themselves of the provisions of the Act of June 28, 1898 (Ind. T. Ann. St. 1899, c. 3a), known as the "Curtis Bill," cannot be sustained, because it clearly appears from the record that the appellants were not in possession of the premises in controversy with the "consent and acquiescence" of an Indian citizen, and they were therefore mere trespassers and intruders. The judgment of the court below is affirmed.

CLAYTON, C. J , and THOMAS and GILL, JJ., concur.