ENGLEMAN et al vs CABLE.

Opinion delivered September 25, 1902.

1.  *Indian    Laws—Pleading—Necessity    and    Sufficiency    of.*

In an action of unlawful detainer brought by the widow and minor children of the deceased owner of the land, who was a Chickasaw

citizen, against his lessee, the law of the Chickasaw Nation, if considered in the case, must be specifically pleaded, and a mere statement of the effect of the law is insufficient.

2. *Indian Lands—Unlawful Detainer—Proper Parties—Law Governing —Administration when Necessary.*

In an action of unlawful detainer brought by the widow and minor children of the lessor against the lessee, on a question as to whether they are the proper parties or whether the suit should be brought by the personal representative of the deceased, in the absence of any pleading setting up the Indian law, the law of administration and descent and distribution in respective chapters of Mans. Dig. will govern and, if the pleadings state such facts as, under such chapters, no administration would be necessary, then the suit may be maintained by their heirs without administration.

Appeal from the United States Court for the Southern District.

Hosea Townsend, Judge.

Action by Mollie Engleman and others against Daniel Cable. Judgment for defendant. Plaintiffs appeal. Reversed.

This was an action of unlawful detainer begun in the United States court for the Southern District of the Indian Territory, at Ryan, by complaint filed July 16, 1900. After several amendments in the complaint, plaintiffs filed their third amended complaint, which is as follows (caption omitted): "Now come the plaintiffs, J. F. Engleman and Mrs. Mollie Engleman, and by leave of court first had herein amends her amended complaint filed herein on the 25th day of February, 1901, so that the same shall read as follows: The plaintiff, Mrs. Mollie Engleman, suing in her own behalf, and as natural guardian and as next friend, for and in behalf of Albert Duford, Ella Duford, Roxy Duford and Franky Duford, who are minor children of herself

(23)

and her husband, Edward Duford, deceased, complaining against Daniel Cable, with respect alleges and shows that the plaintiffs are all members of the Choctaw tribe of Indians, and that the defendant is not a member of any Indian tribe, and resides nearer the town of Ryan, in the Chickaasw Nation, than any place for holding court in the Southern District. For cause of action these plaintiffs show that they are the rightful owners and are entitled to the immediate possession of a certain tract of land, together with all improvements thereon, consisting of about 900 acres pasture and 150 acres in a state of cultivation, situated on Mud Creek, two miles east of Grady, Indian Territory, and known as the 'Old Duford Lease' or 'Cable Place;' that on or about the ―――― day of ――――, 1888, the defendant, Cable, entered into a lease and improvement contract with the said Ed. Duford, the then owner of said land, in which contract the defendant obligated himself to inclose and improve the above described land for the said Duford, and in compensation for his services in making said improvements the said Cable was to use and occupy said land without further cost for a period of ten years; that said lease contract has expired by virtue of its own terms, as well as by virtue of the terms of what is known as the 'Curtis Law'; that on or about April, 1897, the said Edward Duford departed this life intestate, at which time, and for many years prior thereto, he had been a citizen and resident of the Chickasaw Nation, still seized and possessed of said land and all of his rights under said rental or lease contract; that the said Edward Duford left surviving him as his sole and only heirs at law the plaintiff, Mrs. Mollie Engleman, nee Duford, his wife, and the minor plaintiffs, the children of himself and his wife; that in the year 1898 the plaintiff Mrs. Mollie Engleman, nce Duford, intermarried with her present husband, J. F. Engleman. The plaintiffs further show that there has never been any administration on the estate of the said Edward Duford, deceased, and that there was never

any necessity for any such administration; that the decedent owed no debts; that by the law in force in the Indian Territory applicable to such cases, being an act of the Chickasaw legislature approved October 12, 1876, the said property herein sued for, and all the rights under said rental contract, passed and descended to the plaintiffs Mrs. Mollie Engleman, nee Duford, and the minor plaintiffs, and by virtue of said law they became the legal owners and entitled to the possession of said property; that said property is not now, and was not at the death of said Duford, subject to the payment of the debts of his estate, and would not pass to and be assets in the hands of an administrator had one been appointed These plaintiffs further show that, notwithstanding the termination of said lease contract, the said defendant, Cable, still unlawfully and wrongfully holds and detains possession of said property, and refuses to surrender the same to these plaintiffs, after due and legal notice and demand in writing made upon him to vacate said premises; that the use and occupation of the farm land is worth the sum of $1.50 per acre per annum, and the grass land 20 cents per acre per annum. Wherefore, the premises considered, the plaintiff prays for a writ of possession; that defendant be cited to answer this complaint, and upon a final hearing hereof the plaintiffs be awarded possession of said premises, together with all improvements thereto belonging; that they have judgment against the defendant for the use and occupation of said land, for their damages for the unlawful detention of the same, and for their cost, and other and general relief." To this third amended complaint the defendant filed his demurrer, as follows: "Now comes the defendant, and demurs to the plaintiffs' third amended complaint, and says the same is insufficient in law, and shows no right in the plaintiffs to bring this action." Upon this demurrer the court announced the following judgment: "Now at this time came on to be heard the demurrer of the defendant to the plaintiffs' amended complaint filed herein on the 7th day of March, 1901, and the court, after

hearing said demurrer, and being fully advised in the premises, is of the opinion that said demurrer should be sustained, because the plaintffs' complaint fails to show that they have any interest in the land and premises sued for, and, if they do have any interest, this suit should have been brought by an administrator of Duford deceased, and not by the distributees of his estate. It is therefore considered and adjudged by the court that said demurrer be sustained, to which ruling of the court the plaintiffs then and there in open court excepted; and, the plaintiffs declining to amend their complaint, it is further adjudged by the court that this cause be dismissed without prejudice to rights of an administrator to maintain his action; and it is considered that plaintiffs take nothing by reason of this suit, and that the defendant go hence without day, and that he do have and recover from the plaintiffs all his cost herein, for which let execution issue,—to all of which action and rulings by the court the plaintiffs then and there in open court excepted, and still except. And therefore, in open court, the plaintiffs prayed an appeal to the court of appeals for the Indian Territory, which was then and there granted, and the plaintiffs are allowed 60 days in which to prepare and file bill of exceptions." And the case stands upon appeal from said judgment in this court.

*Wolberton & Guest*, and *Potter & Potter*, for appellants.

*Morris & Hayes, Gilbert & Gilbert*, and *J. H. Harper*, for appellee.

GILL. C. J.   The appellants make two assignments of error: "First, the court erred in holding that the wife and minor children of the deceased, Edward Duford, could not maintain this action in their own name, and that the same should have been brought by the administrator; second, the court erred in holding that the plaintiffs did not disclose sufficient interest in said property to entitle them to recover the same from the appel-

lee." It will be noticed by the judgment of the court that the demurrer was sustained for two reasons: First, because, "the plaintiffs' complaint fails to show that they have any interest in the land and premises sued upon"; and second, "if they do have any interest, this suit should have been brought by an administrator of Duford, deceased, and not by the distributees of his estate." An examination of the complaint shows that the plaintiff Mollie Engleman sues in her own behalf and as natural guardian and the next friend for and in behalf of the other plaintiffs, who are minor children of herself and her husband, Edward Duford, deceased. It alleges that they are members of the Chickasaw tribe of Indians, and the defendant is not a member of any Indian tribe. It alleges that the plaintiffs are the rightful owners and entitled to the possession of the premises sued for. It alleges that the defendant, Cable, entered into a lease and improvement contract with the deceased, the husband and father of plaintiffs, who was then the owner of the land, and sets out certain conditions of said lease. It alleges that said lease contract has expired by virtue of its own terms, as well as by virtue of the terms of what is known as the "Curtis Law"; that said Edward Duford departed this life intestate about April 1897, at which time he was a citizen and resident of the Chickasaw Nation, and was still seised and possessed of the land and of his rights under his said rental or lease contract; that said Duford left surviving him, as his sole and only heirs at law, the plaintiff, Mrs. Mollie Engleman, nee Duford, his widow, and the minor plaintiffs, the children of himself and his said wife; that in 1898 the plaintiff Mrs. Engleman intermarried with her present husband, J. F. Engleman. And plaintiffs say there has never been any administration on the estate of Duford, and never was any necessity for such administration; that the decendent owed no debts; that by the law in force in the Chickasaw Nation the said property sued for, and all rights under said rental contract, passed and descended to plaintiffs, and that by virtue of said

law they became the legal owners and entitled to the possession of said property; that said property is not now, and was not at the death of said Duford, subject to the payment of the debts of his estate, and would not pass to and be assets in the hands of an administrator had one been appointed; that said defendant, Cable, still unlawfully and wronglully holds and retains possession of said property, and refuses to surrender possession of the same to plaintiffs, after due and legal notice; and alleges the value of the use and occupation of said premises, and demands possession, and for their damages. Certainly this complaint alleges the relation of landlord and tenant between the deceased, Duford, and the defendant, and the accountability of the defendant, as the lessee of said Duford, for said premises. It alleges the expiration of the term. The defendant is bound to account in some way for his holding, and to return to the possession of the party entitled thereto the lands demised to him; and the question for consideration by the court—and the sole question —is whether or not it is necessary on the part of the defendant to return these lands to the legal heirs of the deceased, Duford, or to his administrator. The plaintiffs in a very vague manner endeavor to plead an act of the Chickasaw legislature as the foundation of their right to bring this suit. The complaint merely refers to the Chickasaw law as an "act of the Chickasaw legislature, approved October 12, 1876." We do not think that this is a sufficient allegation of what such law is. The law itself, as relied upon, should be set out in the complaint, or attached thereto as an exhibit in the pleading, and not the effect of the law as attempted herein. By this general allegation the court is bound in some way to secure for its examination the laws of the Chickasaw Nation, and we have held heretofore that these laws must be specially pleaded where parties seek to avail themselves of them. Hockett vs Alston 3 Ind. Ter. Rep. 432 (58 S. W. 675); Id., 49 C. C. A. 182, 110 Fed. 910; Wilson vs Owens 1 Ind. Ter. Rep. 163, (38 S. W. 976;) Id., 30 C. C. A. 257, 259, 86 Fed.

571; Sass vs Thomas, rendered at this term; (69 S. W. 893). A case involving somewhat the same principle as involved herein was decided by the circuit court of appeals, Eighth circuit, in the case of Davison vs Gibson, 5 C. C. A. 543, 56 Fed. 443. The question there was whether or not a husband took his deceased wife's property under the common law, or whether or not the Creek law in reference to the descent of the separate property of the wife applied, or, in the absence of proof as to the Creek law, if the law as found in the chapters of Mansfield's Digest, put in force in the Indian Territory by act of congress approved May 2, 1890, (Mansf. Dig. c. 49; Ind. Ter. St. 1899, c. 21), should not apply. And it was there intimated that, in the absence of proof of the Creek law, "it would undoubtedly be more rational to presume that the law of custom of the nation on this subject was in harmony with the statute adopted by congress, and that the act of congress was merely declaratory of previously existing law." If we adopt this construction, and apply it to the case here, under the condition of the pleadings, we are compelled to hold that in the absence of the pleading of what the Chickasaw law was in relation to descents and distributions of property, the property descended under chapter 49, §2522, 2545, Mansf. Dig. (§§1820, 1843, Ind. Ter. St. 1899); this statute having been put in force by act of congress of May 2, 1890, 26 Stat. p. 81, c. 182, § 31. And this provision is as follows: "When any person shall die, having title to any real estate of inheritance, or personal estate, not disposed of, nor otherwise limited by marriage settlement, and shall be intestate as to such estate, it shall descend and be distributed, in parcenary, to his kindred, male and female, subject to the payment of his debts and the widow's dower, in the following manner: First. To children, or their descendants, in equal parts. Second. If there be no children, then to the father, then to the mother; if no mother, then to the brothers and sisters, or their descendants, in equal parts. Third. If there be no children, nor their descendants, father, mother, brothers or

sisters, nor their descendants, then to the grandfather, grand-
mother, uncles and aunts and their descendants, in equal parts,
and so on in other cases, without end, passing to the nearest
lineal ancestor, and their children and their descendants, in equal
parts." It will be noticed from this section that the land and
real estate subject to the payment of the debts and the widows'
dower of any intestate descends to the child or children or their
descendants in equal parts. Now, is it necesssary that there
be an administration of an estate simply for the purpose of the
distribution of said estate? The complaint in this case charges
that there were no debts, and no necessity for an administrator
for the purpose of preserving the estate from waste. To deter-
mine this question we must look to the chapter on administration.
Mansf. Dig. § 1 et seq. (Ind. Ter. St. 1899, § 58 et seq.) Section
1 provides: "It shall be the duty of the courts of probate, in
term time, or the clerks of court thereof in vacation, subject to
the confirmation or rejection of the court, to grant letters testa-
mentary and of administration." Section 5 òf said statute
provides: "It shall not be the duty of the clerk or court to issue
letters of administration on the estate of any deceased person,
unless it shall, in the opinion of said clerk or court, be necessary
to preserve such estate from waste or damage or to protect the
rights of creditors." It seems from these two sections, and from
sections which follow, that it is necessary that the question of
whether or not an estate ought so be administered upon is to be
adjudicated by the court, or, during vacation, by the clerk,
subject to the further review of the court. Such adjudication is
determined by the presentation to the clerk and filing in the court
of a petition setting out the facts, and the issue of letters of
administration. If there be no occasion to preserve said estate
from waste, or if there be no debts against said estate, the admin-
istration seems to be wholly unnecessary, and we are bound by
the terms of the statute in that regard. Now, as heretofore held
the tenant was bound to account to his landlord, or to his land-

lord's heirs, or the administrator, for his tenancy of the premises in controversy and the improvements thereon, and to pay to the person or persons entitled thereto such reasonable compensation as was their due under the law and contract. The demurrer in this case, if we are to hold that Mansfield's Digest governs the parties, was improperly sustained, and such action by the court was error, and the case will have to be reversed and remanded for further trial.

But we are convinced that the court below acted upon the presumption that the Chickasaw law was before it, and the case was probably argued to the court from the standpoint of the Chickasaw law, and on that law, had it been properly brought to the attention of this court, this case should be affirmed. We find, on examination of the Chickasaw law (chapter on administration), that it becomes absolutely necessary that an estate be administered upon for the purpose of distribution, and undoubtedly the court had this act under consideration in pronouncing judgment upon this demurrer. At the time of the death of the deceased, Duford, namely, in 1897, section 1 of the act of the Chickasaw Nation in relation to administrators, approved October 19, 1876, provided. "That the judge of the county and probate courts in and for the several counties of the Chickasaw Nation, be, and they are hereby, empowered and required to appoint administrators, administratrixes in their respective counties on the estates of all persons subject to the laws of said nation dying intestate without having made a will within said counties, or where usual domicile was at the time of the death of such persons within the same. * * * And he or she will, as soon as possible, equally divide the estate of such intestate among the lawful heirs of said deceased person." With this law before it, the court could not do otherwise than sustain the demurrer to this complaint; but this law of the Chickasaw Nation is nowhere brought to the attention of this court, either in the

pleadings which were before the trial court, or by reference in the attorney's briefs and arguments; and while it must certainly have been in the mind of the court below, neither that court nor this court have any means of knowing it without a special investigation into the condition of the law of that nation, and are bound, in that event, as heretofore suggested, to hold that the law as laid down in Mansfield's Digest must govern the decision in this case; and in view of that law we are compelled to hold that, where there are no debts, and where there is no necessity for an administrator to preserve the property of the intestate from waste or loss, and where there is no administration, as in this case, and where such facts are alleged by the complaint, the widow and heirs of the intestate are proper parties to maintain an action of forcible entry and detainer as against the lessee of the intestate, and to recover possession of the intestate's leased property.

The demurrer in this case should have been overruled, and the cause proceeded regularly, and the case is therefore reversed and remanded.